| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------x | **FOR PUBLICATION** |
| In re: | Chapter 11 |
| REPUBLIC AIRWAYS HOLDINGS INC., *et al.*, | Case No. 16-10429 (SHL) |
| Debtors. | (Jointly Administered) |
| ----------------------------------------------------------------x | |

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**ZIRINSKY LAW PARTNERS PLLC**
*Attorneys for the Debtors*
375 Park Avenue, Suite 2607
New York, New York 10152
By:   Bruce R. Zirinsky, Esq.
        Sharon J. Richardson, Esq.
        Gary D. Ticoll, Esq.

**HUGHES HUBBARD & REED LLP**
*Attorneys for the Debtors*
One Battery Park Plaza
New York, New York 10004
By:   Christopher K. Kiplok, Esq.

**LUSKIN, STERN & EISLER LLP**
*Attorneys for Citibank, N.A.*
Eleven Times Square
New York, New York 10036
By:   Michael Luskin, Esq.
        Stephan E. Hornung, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Debtors' motion for an order authorizing them to (i) transfer title

to and abandon certain owned aircraft and engines and reject a related aircraft lease, and (ii) to

fulfill their obligations under a certain engine purchase agreement and directing Citibank, N.A.

to cooperate with the closing of that agreement (the "Motion") [ECF No. 100]. Citibank, N.A. ("Citibank") filed a limited objection to the Motion ("Citibank's Objection") [ECF No. 147]. On March 22, 2016, a hearing was held on the Motion and after argument from the parties, the Court issued a bench ruling granting the Debtors' Motion in accordance with conditions stated on the record. This decision is issued to provide a more detailed explanation of the Court's ruling on this issue.

## BACKGROUND

Republic Airways Holdings Inc. ("RAH") and certain of its wholly-owned direct and indirect subsidiaries (together with RAH, "Republic" or the "Debtors") filed for Chapter 11 bankruptcy relief on February 25, 2016. *See* Declaration of Bryan K. Bedford Pursuant to Local Bankruptcy Rule 1007-2 (the "Bedford Decl.") ¶ 1 [ECF No. 4]. RAH provides scheduled regional passenger services through its wholly-owned air carrier subsidiaries, Shuttle America Corporation ("Shuttle") and Republic Airline Inc. *Id.* ¶ 2. Republic owns or leases approximately 300 aircraft, many of which are subject either to secured debt or lease financing arrangements. *See id.* ¶ 39; Motion ¶ 7.

Certain aircraft and engines that the Debtors seek to surrender, return, transfer title to, or abandon are subject to liens of Citibank, pursuant to a mortgage and security agreement to secure the Debtors' obligations with respect to a credit and guaranty agreement (the "Citi Credit Agreement"). Bedford Decl. ¶ 35; Motion ¶ 9. When the Motion was filed, the principal amount outstanding under the Citi Credit Agreement was approximately $23 million, which is secured by the aircraft and engines listed on Annex 1 and 3 to the proposed order (the "Citi Collateral"). *See* Motion ¶ 9. Specifically, the Citi Collateral consists of: (i) six Embraer ERJ-145 aircraft; (ii) one Rolls-Royce AE3007 engine; (iii) one General Electric CF34-10E6 engine; and (iv) all

2

records and documents related to these aircraft and engines (the "Aircraft Records"). *See* Annex 1 and 3 to the proposed order [ECF No. 100]; Citibank's Objection ¶ 10. One Embraer ERJ-145 is leased to a third party, Aerodynamics Incorporated. *See* Annex 2 to the proposed order [ECF No. 100]. Currently, certain engines included in the Citi Collateral are not in the original airframes and engines in the airframes are subject to third party security interests. *See* Supplemental Response of Citibank, N.A. to the Motion ("Citibank's Suppl. Response") ¶ 3 [ECF No. 179]; *see also* Annex 1 to the proposed order. Additionally, some of the engines are not in the same location as the aircraft. *See* Citibank's Suppl. Response ¶ 3; Annex 1 to the proposed order.

The Debtors assert that the Citi Collateral is not required for its long-term business plan. *See* Motion ¶ 9. To that end, the Motion seeks an order authorizing it (i) to surrender, return, and transfer title to certain aircraft or engines and all related "equipment" as defined by 11 U.S.C. § 1110(a)(3), including the Citi Collateral; (ii) to abandon these aircraft, engines and related equipment pursuant to Section 554(a); and (iii) to reject the lease with Aerodynamics Incorporated that covers one ERJ-145 pursuant to Section 365. *See* Motion ¶ 8.[1]

Citibank does not object to the surrender and return of the Citi Collateral. *See* Citibank's Objection ¶ 1. Rather, Citibank contends that the Debtors' proposed "surrender and return" procedures do not satisfy Section 1110(c) of the Bankruptcy Code. *See id.* Specifically, Citibank argues: (i) a fifteen-day period to retrieve the Citi Collateral is unreasonable; (ii) the Debtors should be required to maintain insurance coverage and existing storage maintenance

---

[1] The Motion also initially sought an order authorizing Republic to perform its obligations under a certain purchase agreement under which Shuttle had agreed to sell to MTU Maintenance Lease Services B.V. the General Electric CF34-10E6 engine, serial number 994823 (the "GE Engine"). *See* Motion ¶¶ 10–11. The GE Engine is included in the Citi Collateral. Citibank objected to that portion of the Motion arguing that the sale did not comport with the Bankruptcy Code. The Debtors have withdrawn their request to sell the GE Engine and instead, now seek to surrender it to Citibank. *See* Debtors' Reply to Citibank's Objection ("Debtors' Reply") ¶ 3 [ECF No. 167].

3

programs on the Citi Collateral at least until the earlier of thirty days after entry of an order or the date Citibank takes possession; (iii) the Aircraft Records must be surrendered and returned at the same time the Citi Collateral is surrendered and returned; and (iv) Citibank should have the right to assert any administrative expense claims it may hold. *See id.* ¶¶ 19, 24, 26, 30.[2] Additionally, in a sur-reply styled as a supplemental response, Citibank argues that the Debtors, at their own cost, must remove any third-party engines from Citibank airframes and replace the Citibank engines in the proper airframes. *See* Citibank's Suppl. Response ¶¶ 4, 6.

### DISCUSSION

Under Section 365 of the Bankruptcy Code, a debtor in possession, subject to court approval, "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The purpose behind Section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993) (internal quotations and citation omitted). Generally, courts "approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating Section 365 is traditionally subject to the "business judgment" standard). Courts will generally not second-guess a debtor's business judgment concerning whether an assumption or rejection benefits the debtor's estate. *In*

---

[2]    Citibank also objected to other provisions in the Debtors' proposed order not identified here, including objections to a proposed sale of equipment. The request to sell equipment was withdrawn and Citibank's other objections were addressed in the Debtors' subsequently Revised Proposed Order. *See* Revised Proposed Order (attached as Exh. A to Debtors' Reply). Accordingly, these issues are not addressed in this decision.

*re MF Glob.*, 466 B.R. at 242; *see In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014).

Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The trustee's power to abandon property is discretionary and is "bounded only by that of the court." *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994); *see cf. In re MF Glob. Inc.*, 535 B.R. 596, 608 (Bankr. S.D.N.Y. 2015) (concluding trustee established a sound business reason to abandon certain property—"jettison[ing] unnecessary systems and records" to quickly close a proceeding—and granting trustee's motion to abandon).

Citibank's Objection does not challenge the Debtors' business judgment or discretion under Sections 365 or 544 to return the aircraft and related equipment. Instead, Citibank complains about the manner in which it will be done. This dispute revolves around the meaning of Section 1110 of the Bankruptcy Code. That section—entitled "Aircraft equipment and vessels"—is a special form of protection in bankruptcy cases for aircraft lenders and lessors. Section 1110 provides certain special rights to parties involved in aircraft financing.[3] *See United*

---

[3]     Section 1110 provides, in part:

(a) (1) Except as provided in paragraph (2) and subject to subsection (b), the right of a secured party with a security interest in equipment described in paragraph (3), or of a lessor or conditional vendor of such equipment, to take possession of such equipment in compliance with a security agreement, lease, or conditional sale contract, and to enforce any of its other rights or remedies, under such security agreement, lease, or conditional sale contract, to sell, lease, or otherwise retain or dispose of such equipment, is not limited or otherwise affected by any other provision of this title or by any power of the court.
(2) The right to take possession and to enforce the other rights and remedies described in paragraph (1) shall be subject to section 362 if--
(A) before the date that is 60 days after the date of the order for relief under this chapter, the trustee, subject to the approval of the court, agrees to perform all obligations of the debtor under such security agreement, lease, or conditional sale contract; and
(B) any default, other than a default of a kind specified in section 365(b)(2), under such security agreement, lease, or conditional sale contract--

5

*Airlines, Inc. v. U.S. Bank N.A.*, 406 F.3d 918, 924 (7th Cir. 2005). "More specifically, the provision allows a party with a security interest in aircraft or related equipment to take possession of its collateral pursuant to the terms of the contract, notwithstanding the automatic stay normally imposed by Section 362 upon the filing of the bankruptcy, unless the debtor meets certain conditions." *In re AMR Corp.*, 485 B.R. 279, 304–05 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013), *cert. denied*, *U.S. Bank Trust Nat'l Ass'n v. AMR Corp.*, 134 S. Ct. 1888 (2014). "These conditions include that, within the first 60 days of the case, the debtor[4] must agree to perform its contractual obligations as they become due and that the debtor must also

---

(i) that occurs before the date of the order is cured before the expiration of such 60-day period;
(ii) that occurs after the date of the order and before the expiration of such 60-day period is cured before the later of--
(I) the date that is 30 days after the date of the default; or
(II) the expiration of such 60-day period; and
(iii) that occurs on or after the expiration of such 60-day period is cured in compliance with the terms of such security agreement, lease, or conditional sale contract, if a cure is permitted under that agreement, lease, or contract.
(3) The equipment described in this paragraph--
(A) is--
(i) an aircraft, aircraft engine, propeller, appliance, or spare part (as defined in section 40102 of title 49) that is subject to a security interest granted by, leased to, or conditionally sold to a debtor that, at the time such transaction is entered into, holds an air carrier operating certificate issued pursuant to chapter 447 of title 49 for aircraft capable of carrying 10 or more individuals or 6,000 pounds or more of cargo; or
(ii) a vessel documented under chapter 121 of title 46 that is subject to a security interest granted by, leased to, or conditionally sold to a debtor that is a water carrier that, at the time such transaction is entered into, holds a certificate of public convenience and necessity or permit issued by the Department of Transportation; and
(B) includes all records and documents relating to such equipment that are required, under the terms of the security agreement, lease, or conditional sale contract, to be surrendered or returned by the debtor in connection with the surrender or return of such equipment.
(4) Paragraph (1) applies to a secured party, lessor, or conditional vendor acting in its own behalf or acting as trustee or otherwise in behalf of another party.

11 U.S.C. § 1110(a).

[4]  The language of Section 1110 actually refers to the actions of the trustee, not the debtor. *See* 11 U.S.C. § 1110(b)(2)(A). But the bankruptcy trustee in this case, and most cases under Chapter 11, is the debtor in possession. *See In re Harp*, 166 B.R. 740, 746 (Bankr. N.D. Ala. 1993) ("Chapter 11 debtors-in-possession . . . have fiduciary responsibilities to unsecured creditors and other parties in interest requiring them to act in the capacity of a bankruptcy trustee.").

cure certain—but not all—contractual defaults."[5] *Id.* at 305. In practice, Section 1110 limits the benefit of the automatic stay for a debtor's aircraft and related equipment to the first 60 days after filing of the bankruptcy petition, at which point "the debtor generally must either elect to cure all non-bankruptcy defaults and perform under the contract or surrender the aircraft" and related equipment.[6] *Id.* at 305–06.

But what happens when a debtor no longer wants the collateral? Section 1110 contemplates that the debtor "immediately surrender and return" any unwanted collateral if the lender or secured party becomes entitled to take possession because the automatic stay has terminated. *See* 11 U.S.C. § 1110(c). Thus, a debtor is faced with the "rather stark choice" to perform and cure the relevant contractual obligations or surrender the equipment. *See* Collier on Bankruptcy ¶ 1110.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016). Although the statute provides an immediate "surrender and return," it does not specify the conditions for the surrender and return, including whether a debtor must comply with any conditions of return in

---

[5]    Under Section 1110(a)(2)(B), a debtor is not required to cure those defaults that are "of a kind specified in section 365(b)(2)." 11 U.S.C. § 1110(a)(2)(B). These include:

> a default that is a breach of a provision relating to--
> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
> (B) the commencement of a case under this title;
> (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement; or
> (D) the satisfaction of any penalty rate or penalty provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease.

11 U.S.C. § 365(b)(2).

[6]    As a practical matter, parties often agree to extensions of the 60-day deadline, which is permitted under the statute. *See* 11 U.S.C. § 1110(b) (providing that the right to take possession is subject to the parties' right to agree to extend the 60-day period). A detailed explanation of how Section 1110 operates can be found in *In re UAL Corp.*, 299 B.R. 509 (Bankr. N.D. Ill. 2003). Delving into the history of Section 1110, the court examined whether (1) an election under Section 1110(a) gives rise to an administrative claim, and (2) a debtor's failure to cure pre-petition defaults on aircraft within the 60-day period prevents the effectiveness of a Section 1110(a) election. *Id.* at 516–20.

the underlying agreement. 11 U.S.C. § 1110; *see* Collier ¶ 1110.02[5]. As the Collier on

Bankruptcy treatise states:

> there is no reported authority under the present version of section 1110 as to whether a debtor has an obligation to do more than make the aircraft immediately available to the lessor or secured party at its location and in its condition on the applicable date, or as to whether the costs of repair and repositioning are administrative expenses, if the lease is not timely rejected before the 60th day of the case.

Collier ¶ 1110.02[5]. Perhaps not surprisingly then, "[t]he terms of return are frequently disputed in airline cases." *Id.*; *see, e.g., In re US Airways Grp., Inc.*, 287 B.R. 643, 645 (Bankr. E.D. Va. 2002) (stating that one theme of the objections before the court was whether the debtors should be permitted to abandon or reject under Section 1110 without complying with requirements in the underlying loan or lease agreements); *In re Northwest Airlines Corp.*, Case No. 05-17930, Hearing Transcript of October 7, 2005 ("*Northwest Airlines* Hr'g Transcript") at 40:9–41:24 [ECF No. 1847] (transcript attached as Exh. D to Debtors' Reply) (objecting party argued that the "surrender and return" of aircraft under Section 1110(c) should comport with terms of underlying leases).

Applying these principles to the parties' dispute in this case, the Court rejects the majority of Citibank's objections. First and foremost, the Court declines to adopt Citibank's suggestion that the Debtors return the aircraft with the matching engines. Citibank's Suppl. Response ¶ 4. Citibank complains that some of their engines are not in the same location as the matching aircraft, and that some engines in their airframes are owned by unidentified third-parties so that those engines must be removed before the aircraft may be returned to Citibank. *Id.* ¶ 3. But Citibank's request is akin to requiring the Debtors to comply with the conditions for surrender in the underlying agreements between the parties. That argument has been rejected by

8

the few courts that have spoken on this issue. In *US Airways Group, Inc.*, for example, the court was confronted with a debtors' motion seeking to reject an unspecified number of aircraft and equipment leases and to abandon an unspecified number of aircraft and equipment. 287 B.R. at 644. In that case, the financing parties argued that the debtors should not be permitted to abandon or reject aircraft without complying with the requirements in the underlying loan or lease agreements. *Id.* at 645. These requirements included returning the aircraft and engines to a place designated by the lender or lessor, reinstalling any original engines that were not currently on the aircraft, and providing all manuals, logs, certifications and documentation. *Id.* The court observed that the dispute arose in the context of the debtors' motion to seek "fast track" authority to abandon or reject aircraft and related equipment, with that relief sought given the stringent 60-day deadline under Section 1110 and fear of increased costs after that deadline passed. *Id.* at 646. Ultimately, the court did not require compliance with contractual requirements for return of the collateral. *Id.* at 647. Instead, it held that the aircraft lenders and lessors were not foreclosed from asserting a claim arising from non-compliance with such requirements. *Id.* at 647 (stating "the court neither excuses such non-compliance nor forecloses any claim the lender or lessor might assert arising from such non-compliance").

Other courts have similarly rejected attempts to put conditions on the "surrender and return" obligations under Section 1110. As the court in the *Northwest Airlines* bankruptcy observed:

> [T]he hallmark of Section 1110 is speed. Congress heeded the insistence of aircraft lenders and lessors that they be able to retrieve their property without delay. It will be difficult to convince this Court that a lender has acted reasonably if it tarries in accepting surrender and return or taking possession of its property.

*Northwest Airlines* H'rg Transcript at 72:7–12. Thus, the court in *Northwest Airlines* rejected the

9

argument that the debtors must comply with all the return provisions of a given lease or security agreement, noting that "[t]hat is precisely what Section 1110 does not provide." *Id.* at 71:3; *see also id.* at 70:22–71:22 (noting that Congress did not require surrender and return to comply with the security agreement or lease, "no doubt recognizing the cost and burdens this would place on the debtors, their estates and their other creditors").[7]

Similar return requirements were rejected in the *Delta Air Lines* case. The court refused to require the debtors to repair aircraft or transport unserviceable aircraft to the Section 1110 parties, concluding that the statute does not give lenders and lessors a "miracle right to have [the debtors] put it all back together again." *In re Delta Air Lines, Inc.*, Case No. 05-17923, Hearing Transcript of October 17, 2005 ("*Delta* H'rg Transcript") at 17:2–3 (transcript attached as Exh. C to Debtors' Reply) (noting that it did not seem to be the intent of the statute to require aircraft be returned in a particular condition). The court made clear that Section 1110 meant that "you get [the equipment] immediately and you get it as is, where it is." *Id.* at 18:15 (finding it counterintuitive to require immediate return of equipment while also imposing conditions on its return); *cf. In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 51 (Bankr. S.D.N.Y. 2004) (rejecting argument that debtor must comply with burdensome lease covenants in order to reject a lease under Section 365). Like the court in *US Airways*, the court in *Delta* reserved decision on whether the Section 1110 counterparties might have administrative expense claims. *Delta* Hr'g Transcript at 16:24–17:24; *see, e.g., In re Cont'l Airlines, Inc.*, 146 B.R. 520, 527–28 (Bankr. D.

---

[7] The court noted that its decision was not inconsistent with the unreported order in *In re Atlas Worldwide Holdings, Inc.*, Case No. 04-10792 (Bankr. S.D. Fla.) (order attached as an exhibit to ABN AMRO Bank N.V.'s objection in *Northwest Airlines Corp.*, Case No. 05-17930 [ECF No. 500-1]). In the *Atlas* case, the court did not render a final decision requiring debtors to return equipment according to the lease conditions, but instead set another hearing to determine what conditions were appropriate under Section 1110 and if the debtors should be affirmatively required to perform such obligations or if they would simply give rise to a claim.

Del. 1992) (noting that debtors' failure to return aircraft in compliance with return conditions in the lease may result in administrative claim for damages for aircraft lessor).

The same result is appropriate here. The Court will not require that the Debtors return the aircraft and related equipment in a particular condition for surrender and return. But nothing in the Court's ruling forecloses any claim that Citibank may have for costs associated with the surrender and return. So while Citibank has complained that it will be required to pay the cost of taking the engines off the airframes that do not match, they have a right to file a claim for these expenses. Indeed, the Debtors revised the proposed order on this Motion at Citibank's request to explicitly preserve Citibank's right to file such a claim. *See* Debtors' Reply ¶¶ 18, 19; Revised Proposed Order at 4 (attached as Exh. A to Debtors' Reply); *see also* Order Authorizing Debtors to Transfer Title to and Abandon Certain Owned Aircraft and Engines and Reject Related Aircraft Lease, entered March 23, 2016 at 4–5 [ECF No. 215].

Citibank suggests that it would be better for the parties to split the costs associated with the surrender and return of the aircraft, rather than leave the cost determination to a later date in the claims process. *See* Hearing Transcript of March 22, 2016 ("March 2016 Hr'g Transcript") at 81:24–82:4 [ECF No. 225]. In doing so, Citibank relies upon the reasonableness standard cited by various courts in connection with surrender and return of aircraft collateral. *See Northwest Airlines* H'rg Transcript at 71:19–72:22 (applying a "reasonableness" standard for the surrender and return process of Section 1110); *In re FLYi, Inc.*, 2005 WL 7141581, at *2 (Bankr. D. Del. Dec. 5, 2005) (holding that bankruptcy courts apply a reasonableness test in applying Section 1110). Of course, reasonableness is determined on a case by case basis in each airline

11

bankruptcy.[8] But the Court is not convinced that a splitting of such costs now is appropriate here given the Court's lack of information about the actual conditions associated with these aircraft and engines. *See* March 2016 Hr'g Tr. at 56:21–57:24; 61:20–62:12 (the Court questioning the conditions of the aircraft, for example the number of engines that would need to be uninstalled from aircraft and length of time such procedures would take, with the Debtors unable to provide such information due to the factual nature of the circumstances). In addition, the Court is concerned about such an approach here given what appears to be Citibank's lack of due diligence in addressing the surrender and return of these aircraft. *See id.* at 64:1–24 (Debtors' counsel representing that Citibank waited sixteen days from the filing of the Debtors' Motion to request an inspection of the aircraft); *see also* Debtors' Reply ¶ 9 (the Debtors in this case have raised a similar concern of being "saddle[d] . . . with the delay and expense of navigating through a thicket of obligations" rather than being able to immediately surrender and return the property); *see cf. In re US Airways Grp.*, 287 B.R. at 646 (noting debtors' concerns about potential additional expense to the estate for lack of prompt return and surrender). Citibank's lack of prompt action has made it more difficult to determine a reasonable approach at this time regarding how to handle these costs.[9] A claim filed by Citibank—and any resulting decision on

---

[8]     Indeed, some courts have imposed conditions on surrender and return at a debtor's expense. *See, e.g., In re FLYi*, 2005 WL 7141581, at *2–3 (holding that Section 1110 does not require compliance with return conditions of lease but setting forth options for debtors to satisfy reasonableness requirement).

[9]     The Debtors note that Citibank's objections about the location and lack of matched engines and airframes was contained in a sur-reply filed after its original objection. While Debtors urge the Court not to consider Citibank's belated arguments, the Court thinks it more appropriate to address them on the merits, even if the belated raising of these issues illustrates a practical consequence of Citibank's failure to promptly attend to these issues notwithstanding the deadlines in Section 1110. *See In re US Airways Grp.*, 287 B.R. at 646.

that claim—will be a more accurate reflection of the true burdens associated with the surrender and return process than a simple splitting of the costs.[10]

The Court takes the same approach as to the records for these aircraft and related equipment. Citibank requests that Debtors return such records at the same time it surrenders and returns any aircraft or related equipment. But the Debtors have already made such records and documentation available for pick-up by Citibank. *See* March 2016 Hr'g Tr. at 75:15–17; 79:14–20. For the reasons set forth above, therefore, the Debtors have honored their obligations for surrender and return of such records and documentation, subject once again to Citibank's right to file a claim. *Cf. In re Mesa*, 2010 WL 5263976, at *7 (providing for debtors to surrender and return all records, logs, manuals and other documents on the applicable effective date and at the same location as the aircraft and/or engines being surrendered and returned, unless otherwise agreed between the debtors and applicable counterparty).

In contrast to the conditions for the issues above, the Court has sufficient information to impose reasonable terms on the Debtors' obligation to continue insurance coverage and maintenance. On this issue, the parties' proposals disagree. The Debtors offer to continue insurance coverage and maintenance until the later of: (1) the entry of a Court order on the

---

[10] There are some orders in airline bankruptcy cases setting forth return conditions or associated costs where the parties reached agreement on these issues or there was no objection to the debtor's proposed procedures. *See In re Pinnacle Airlines Corp.*, Case No. 12-11343 (Bankr. S.D.N.Y.) [ECF Nos. 164, 187-1] (no objection filed to debtors' motion to reject aircraft consistent with surrender and return process in Section 1110); *In re Mesa Air Grp., Inc.*, 2010 WL 5263976, at *6–11 (Bankr. S.D.N.Y. Feb. 23, 2010) (order providing for, among other things, surrender and return procedures that were agreed upon as reflected in amended agenda for hearing at Case No. 10-10018, ECF No. 338); *see also* Final Order Authorizing Debtors to Reject Certain Aircraft, Engine and Propeller Leases Pursuant to Section 365(a) of the Bankruptcy Code at 4, *In re Delta Air Lines, Inc.*, Case No. 05-17923 [ECF No. 790] (attached as Exh. B to Citibank's Objection) (requiring debtors to cover costs of moving engines from their current airframes to the airframes associated with those engines but capping debtors' responsibility at an agreed upon amount of $180,000, *see Delta* Hr'g Transcript at 19:17–23 (debtors' counsel noting an agreement had been reached "up to some caps --")). While agreements between parties are obviously encouraged in these situations, the parties here have not reached an agreement. In any event, the Debtors obviously have an incentive to cooperate in the surrender and return of aircraft and related equipment so as to reduce potential claims against the estate.

Motion,[11] and (2) the earlier of either (a) the 15th day after the relevant effective date,[12] or (b) the date that Citibank takes possession of the equipment. *See* Debtors' Reply at Schedule 1; *id.* ¶¶ 13–14. Translating the Debtors' proposal into actual dates, insurance coverage and maintenance would end on the later of: (1) March 23, 2016, the date an order was entered on the Motion, and (2) March 19, 2016, which was 15 days after the effective date but three days before the hearing on this Motion. Citibank is at the other end of the spectrum, requesting the earlier of 30 days from the date of the Court's order or whenever Citibank retrieves its collateral. *See* Citibank Objection ¶ 24. If Citibank delayed in retrieving its collateral, however, it could impose upon the Debtors' estate the cost of an additional 30 days of insurance and maintenance. Balancing the need for a prompt return of the equipment with Citibank's right to have a reasonable opportunity to achieve such prompt retrieval of the collateral, the Court concludes that the Debtors must provide insurance coverage and maintenance for a period of 15 days from the date of the Court's order ruling on the Motion. *See Northwest Airlines* Hr'g Transcript at 71:21–72:12; 73:11–23 (imposing a "reasonableness" standard on surrender and return obligations under Section 1110). Giving Citibank the benefit of the additional time is reasonable considering that Citibank has the burden of retrieving its collateral. *See id.* at 71:21–72:12.

---

[11]    The Court's order on the Motion was entered on March 23, 2016. *See* ECF No. 215.

[12]    The Debtors defined the "effective date" as March 4, 2016. *See* Annex 1 to Revised Proposed Order.

14

## CONCLUSION

For the reasons stated above, the Court grants the Debtors' Motion as set forth above and in accordance with the order entered by this Court on March 23, 2016. [ECF No. 215].

Dated: New York, New York
      April 8, 2016

*/s/ Sean H. Lane*
UNITED STATES BANKRUPTCY JUDGE