UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                                                    Chapter 11

REPUBLIC AIRWAYS HOLDINGS INC., *et al.*,          Case No. 16-10429 (SHL)

               Reorganized Debtors.                            (Jointly Administered)
----------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**ZIRINSKY LAW PARTNERS PLLC**
*Attorneys for the Reorganized Debtors*
375 Park Avenue, Suite 2607
New York, New York 10152
By:    Bruce R. Zirinsky, Esq.
          Sharon J. Richardson, Esq.
          Gary D. Ticoll, Esq.

**HUGHES HUBBARD & REED LLP**
*Attorneys for the Reorganized Debtors*
One Battery Park Plaza
New York, New York 10004
By:    Christopher K. Kiplok, Esq.
          Erin E. Diers, Esq.
          Daniel M. Nuzzaci, Esq.

**MCDOWELL RICE SMITH & BUCHANAN, P.C.**
*Attorneys for Jet Midwest, Inc.*
604 West 47th Street, Suite 350
Kansas City, Missouri 64112
By:    James F.B. Daniels, Esq.

**SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is Jet Midwest, Inc.'s ("JMI") motion for allowance of an unsecured

rejection damages claim (the "Motion"). [*See* ECF No. 1630]. JMI seeks allowance of its claim

for damages arising from the debtors' rejection of an unexpired lease of nonresidential real

property, despite having missed the deadline for filing such a claim. *See* Motion ¶ 23. The

debtors oppose the Motion, arguing that JMI received proper notice of the deadline. *See* Debtors' Opposition to the Motion ("Opposition") ¶ 2 [ECF No. 1808]. For the reasons explained below, the Motion is denied.

## BACKGROUND

On February 25, 2016, Republic Airways Holdings Inc. and certain of its wholly-owned direct and indirect subsidiaries ("Republic" or the "Debtors") filed for Chapter 11 relief. One of the Debtors, Republic Airline Inc., was a party to a lease with JMI for a portion of Building Number 1 at Kansas City International Airport Overhaul Base (the "Hangar Lease"). *See* Hangar Lease, attached as Exh. A to Opposition. Under Section 365 of the Bankruptcy Code, Republic had 120 days to file a motion to assume or reject leases of nonresidential property such as the Hangar Lease, a deadline that can be extended for at most 90 days. *See* 11 U.S.C. § 365(d)(4)(B)(i). Before the expiration of the 120-day deadline, in fact, Republic did request an extension of the time to assume or reject its nonresidential leases. [*See* ECF No. 611]. The extension motion was served by overnight mail on JMI, attention: Karen Kraus, 9200 NW 112th Street, Kansas City, Missouri, 64153, consistent with the service instructions in the Hangar Lease. *See* Exh. B, attached to Aff. of Service [ECF No. 626]; *see also* Hangar Lease § 13.2 (setting forth where notice should be sent). The Court granted the extension of time to assume or reject nonresidential real property leases to September 22, 2016. [*See* ECF No. 688].

On June 23, 2016, Republic notified the Chief Executive Officer of JMI, Patrick Kraus, that Republic intended to reject the Hangar Lease and would return the keys to the hangar on August 31, 2016. *See* Decl. of Ethan J. Blank in Support of Opposition ("Blank Decl.") ¶ 3, attached as Exh. C to Opposition. The keys were in fact returned to JMI's facility director Rick Pyburn on August 26, 2016. *See id.* ¶ 4.

On August 31, 2016, Republic filed a motion seeking to reject the Hangar Lease (the "Rejection Motion"). [*See* ECF No. 949]. Republic's claims and noticing agent—Prime Clerk—served the Rejection Motion on JMI via first class mail that day, once again to Karen Kraus at 9200 NW 112th Street, Kansas City, Missouri 64153. *See* Aff. of Service at 2 [ECF No. 967]. On September 13, 2016, Mr. Daniels, counsel to JMI, filed a notice of appearance and request for service papers in the Debtors' cases and listed his e-mail address as: jdaniels@mcdowellrice.com. [*See* ECF No. 980]. JMI did not object to the Rejection Motion. On September 22, 2016, an order approving the Rejection Motion was granted. *See* Order Authorizing (i) Rejection of Unexpired Lease of Nonresidential Real Property Between Republic and JMI and (ii) Abandonment of Certain Property of the Estate (the "Rejection Order") [ECF No. 1030]. Under the Rejection Order, JMI was required to file a claim for damages arising from the rejection of the Hangar Lease within 30 days (the "Rejection Bar Date"). *See id.* at 2. The Rejection Order was served by (1) e-mail upon JMI's counsel at jdaniels@mcdowellrice.com, and (2) first class mail on JMI, attention Karen Kraus, once again at 9200 NW 112th Street, Kansas City, Missouri, 64153. *See* Aff. of Service ("Rejection Order Service Aff.") at 2, Exh. A at 5 [ECF No. 1047]. Neither the Rejection Motion nor the Rejection Order were returned as undeliverable. *See* Decl. of Herb Baer in Support of Opposition ("Baer Decl.") ¶¶ 6, 8, 10, attached as Exh. B to Opposition.

On March 22, 2017—some five months after the Rejection Bar Date—JMI filed this Motion to seek allowance of an unsecured rejection damages claim.[1] The Motion asserts that JMI never received actual notice of the Rejection Motion or Rejection Order; therefore, the Court should allow its claim for rejection damages as if it was timely. *See* Motion ¶¶ 23, 30;

---

[1] The Court confirmed the Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code in April 2017, and it went effective that month. [*See* ECF Nos. 1722, 1748].

3

Reply Memorandum of Law in Support of Motion ("Reply") ¶¶ 23, 30–37 [ECF No. 1816]. In the alternative, JMI seeks leave to file an amended proof of claim. *See* Motion ¶ 25. The Debtors contend that they followed all procedures required for notice set by the Court and that JMI's late claim should not be allowed. *See* Opposition ¶¶ 2–4.

## DISCUSSION

The constitutional standard for due process requires that known creditors in a bankruptcy case receive actual notice of a bar date. *See City of New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296–97 (1953). "It is well settled that proof that a letter was properly addressed and placed in the mail system creates a presumption that the letter was received in the usual time by the addressee." *In re AMR Corp.*, 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013). Accordingly, one would normally assume that JMI is bound by the Rejection Bar Date here given that the Debtors served the Rejection Order on both JMI and JMI's counsel. *See* Rejection Order Service Aff. at 2; Exh. A at 5. But JMI makes three arguments for the allowance of its unsecured rejection damages after the Rejection Bar Date. First, JMI relies upon statements about the Hangar Lease in Republic's Rejection Motion in seeking to judicially estop Republic from challenging JMI's claim. *See* Motion ¶ 28. Second, JMI contends that Republic's Rejection Motion should be considered an informal proof of claim for JMI's rejection damages. *See id.* ¶ 29. Finally, JMI argues that its failure to timely file a claim for rejection damages was due to excusable neglect. *See id.* ¶ 30.

### A. Doctrine of Judicial Estoppel

The doctrine of judicial estoppel provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice

4

of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Judicial estoppel aims "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*. (internal quotations and citation omitted). There are several factors typically used to determine if judicial estoppel applies in a particular case: (1) whether a party's later position is "clearly inconsistent with its earlier position"; (2) whether the party's former position was accepted by the court in the earlier proceedings; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51. Courts in the Second Circuit grant relief under the doctrine "only when the risk of inconsistent results with its impact on judicial integrity is certain." *Republic of Ecuador v. Chevron Corp.,* 638 F.3d 384, 397 (2d Cir. 2011) (internal quotations and citation omitted); *see also Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116–17 (2d Cir. 2014).

  JMI notes that Republic's Rejection Motion set forth facts, statements, and amounts related to the terms of the Hangar Lease, and argues that these "admissions" are sufficient to judicially estop Republic from denying JMI's rejection damages claim. *See* Motion ¶ 28. But JMI fails to satisfy the three prongs required for judicial estoppel. As to the first prong, Republic has not made statements now that are "clearly inconsistent" with any earlier statements presented to the Court. In its earlier Rejection Motion, Republic provided the Court with the necessary information to seek relief under Section 365(a) of the Bankruptcy Code. It did not take a position on the amount of damages to which JMI might be entitled by virtue of rejection but rather explicitly contemplated that the issue would be left to another date. *See* Rejection Order at 2 ("[JMI] may assert an unsecured claim for damages arising from the rejection of the MCI

5

Hangar Lease . . . . The deadline to file a proof of claim against the Debtors with respect to any Rejection Claim shall be 5:00 p.m. prevailing Eastern Time on the date that is thirty (30) days after the date of this Order.").

The second prong—whether the party's former position has been adopted in some way by the court in the earlier proceedings—also has not been established. The Rejection Order was granted by the Court, thus adopting Republic's position that rejection was appropriate under Section 365 of the Bankruptcy Code. But the Rejection Motion did not set forth an amount of the rejection damages, nor did the Court adopt any amount of rejection damages in the Rejection Order. Rather, the Rejection Order signed by the Court specifically allows the Debtor to review and object to any rejection claims. *See id.* ("Nothing contained in [the Rejection] Order shall be construed as a waiver by the Debtors or the Official Committee of Unsecured Creditors of the right to review any such Rejection Claim and, where appropriate, object to the allowance of any or all of the Rejection Claim.").

As to the third prong, JMI does not argue that the Debtors intended to act unfairly. *See* Motion ¶ 46. Rather, JMI argues that because the Rejection Motion itself did not request a bar date, it would be generally unfair for Republic to object on the grounds of untimeliness. *See id.* ¶ 48. But this argument is meritless given that Rejection Order explicitly establishes a deadline for JMI to file any claim. *See* Rejection Order at 2. Indeed, the content of the Rejection Order is consistent with the practice used in most Chapter 11 cases of notifying the party to the rejected contract that it has thirty days after the date of the rejection order to file a proof of claim. *See* 9-3002 Collier on Bankruptcy ¶ 3002.03[5] (16th ed. 2017) ("A claim arising from rejection of an executory contract or unexpired lease must be filed within whatever period the court fixes."); *see also* United States Bankruptcy Court Southern District of New York, Procedural Guidelines for

6

Filing Requests for Orders to Set the Last Date for Filing Proofs of Claim at 10, 20, *available at* http://www.nysb.uscourts.gov/sites/default/files/3003-1-guidelines.pdf (updated 12/01/2015). As this deadline was clearly set forth in the Rejection Order, Republic's reliance on this bar date does not rise to the level of unfairness.

### B. Informal Proof of Claim

Under Bankruptcy Rule 3003(c)(2) "[a]ny creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(2). The Second Circuit has held "that it is not essential that a document be styled a 'proof of claim,' or that it be filed in the form of a claim, if it fulfills the purposes for which the filing of proof is required." *In re Dumain*, 492 B.R. 140, 149 (Bankr. S.D.N.Y. 2013) (quoting *In re Lipman*, 65 F.2d 366, 368 (2d Cir. 1933)). Thus, under certain circumstances, bankruptcy courts may elect to treat pleadings filed in a bankruptcy case as an "informal proof of claim." This is an equitable remedy available where a creditor failed to comply with the proper procedures for filing a proof of claim, but still took some action to preserve its interests and put the debtor on notice of its claim. *See Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608–09 (6th Cir. 2000); *In re Dana Corp.,* 2008 WL 2885901, at *3 (Bankr. S.D.N.Y. July 23, 2008) (discussing informal proof of claim doctrine in a Chapter 11 case); *see also In re WPRV-TV, Inc.,* 102 B.R. 234, 238 (Bankr. E.D. Okla. 1989) ("The intent of the informal [p]roof of [c]laim concept is to alleviate problems with form over substance; that is, equitably preventing the potentially devastating effect of the failure of a creditor to formally comply with the requirements of the

7

Code in the filing of a [p]roof of [c]laim, when, in fact, pleadings filed by the party asserting the claim during the claims filing period in a bankruptcy case puts all parties on sufficient notice that a claim is asserted by a particular creditor.").

Courts in the Second Circuit require that to be an informal proof of claim, "a document must have been 1) timely filed with the bankruptcy court and become part of the judicial record, 2) state the existence and the nature of the debt, 3) state the amount of the claim against the estate, and 4) evidence the creditor's intent to hold the debtor liable with the debt." *In re Dumain*, 492 B.R. at 149 (internal quotations and citation omitted); *see also In re Dana*, 2008 WL 2885901, at *3. The burden of proof is on the party seeking to apply the informal proof of claim doctrine. *See In re Dumain*, 492 B.R. at 149.

JMI fails to satisfy the requirements for an informal proof of claim. Most obviously, JMI failed to take any action to preserve its interests and put the Debtors on notice of its claim. *See In re M.J. Waterman*, 227 F.3d at 608–09. Instead, JMI relies on an action taken by the Debtors: the filing of the Rejection Motion. But JMI cites no authority—and the Court is aware of none—where a creditor relied upon actions of a debtor to satisfy the requirement for filing a claim.[2] *See In re Dumain*, 492 B.R. at 149 ("The doctrine of informal proof of claim provides that a *creditor's filing of a document* . . . which indicates, at a minimum, the basis for a claim and the *creditor's intent* to hold the estate liable . . . .") (emphasis added) (internal quotations and citation omitted); *In re WPRV-TV, Inc.,* 102 B.R. at 238 (observing that the informal proof of claim doctrine is intended to prevent "the potentially devastating effect of the failure of a creditor to formally comply with the requirements of the Code in the filing of a [p]roof of [c]laim, when, in

---

[2]    *See* Transcript of Hearing Held on June 15, 2017 ("Hr'g Tr.") 18:6–23, 19:20–25 [ECF No. 1832] (JMI conceding that it was unaware of any case law to support argument that a debtor's writing could be an informal proof of claim).

8

fact, *pleadings filed by the party asserting the claim* during the claims filing period in a bankruptcy case puts all parties on sufficient notice that a claim is asserted by a particular creditor.") (emphasis added). Indeed, adopting such a lax and unclear standard is inconsistent with the statutory mandate in Bankruptcy Rule 3003(c)(2) that a proof of claim is required except in specified circumstances. *See* Fed. R. Bankr. P. 3003(c)(2) (a creditor "whose claim . . . is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim . . . ."). Even if the Court were somehow to look to the Rejection Motion as some kind of supplement to the Debtors' schedules—an approach which is not supported by the Bankruptcy Code or case law—the Rejection Motion did not in any way establish that the Debtors owed a claim to JMI.[3]  *See supra* Section A.

Not surprisingly, JMI fails to satisfy the four-part test to qualify the Rejection Motion as an informal proof of claim. *See In re Dumain*, 492 B.R. at 149. As to the first two prongs, one might argue that the Rejection Motion was filed timely with this Court and stated the existence of a debt. But JMI cannot satisfy the third prong because the Rejection Motion does not "state the amount of the claim against the estate." *Id.* The Rejection Motion merely states that the monthly rent for the Hangar Lease is approximately $129,885, and that rejecting the Hangar Lease would save approximately $1.56 million annually. *See* Rejection Motion ¶¶ 8, 13. But it does not calculate the amount of any potential claim JMI may have against the estate. The fourth prong of the test is also not satisfied because the Rejection Motion provides no evidence of an

---

[3] Under Bankruptcy Rule 3004, Republic has the right to file a proof of claim on behalf of JMI. *See* Fed. R. Bankr. P. 3004. But an actual filing of a claim is still required and it must be within thirty days of the bar date. *See Green Tree Servicing, LLC v. Wilson* (*In re Wilson*), 532 B.R. 486, 488 n.2 (S.D.N.Y 2015). The Debtors never filed such a claim here.

In June 2016, the Court entered an order establishing the deadline of July 22, 2016 as the general bar date for filing a proof of claim and the procedures for filing proofs of claim. [*See* ECF No. 649]. On June 16, 2016, Prime Clerk, the Debtors' claims and noticing agent, served the notice of the general bar date on JMI. [*See* ECF No. 707]. That notice also included procedures for filing proofs of claim with respect to rejected leases.

intent by JMI to hold the Debtors liable for a debt because, as stressed earlier, the Rejection Motion is not a pleading filed by JMI.  In fact, JMI concedes, as it must, that the Rejection Motion does not provide evidence of JMI's intent to hold Republic liable for any rejection damages stemming for the rejection of the Hangar Lease.  *See* Motion ¶ 63 (stating the "fourth attribute of an 'informal proof of claim' . . . appears to be missing from this otherwise sufficient 'informal' proof" but arguing that the filing of a formal or informal proof of claim by a debtor "on behalf of a creditor evidences the debtor's intention to pay or otherwise treat the claim").

### C. Excusable Neglect

Under Federal Rule of Bankruptcy Procedure 9006(b)(1), the court has discretion to enlarge the time to file claims "where the failure to act was the result of excusable neglect."  In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), the Supreme Court interpreted excusable neglect as a flexible and equitable standard, "taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.  The moving party bears the burden of proof to establish excusable neglect.  *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 121 (2d Cir. 2005).

The Second Circuit has adopted a strict approach to excusable neglect.  *See Asbestos Pers. Injury Plaintiffs v. Travelers Indem. Co.* (*In re Johns-Manville Corp.*), 476 F.3d 118, 124 (2d Cir. 2007); *In re Enron Corp.*, 419 F.3d at 123 ("[T]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule, and . . . where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under

the *Pioneer* test.") (internal quotations omitted). However, "[t]he *Pioneer* factors are not given equal weight." *Weisfelner v. Blavatnik* (*In re Lyondell Chem. Co.*), 543 B.R. 400, 409 (Bankr. S.D.N.Y. 2016). In particular, "three of the [*Pioneer*] factors—the length of the delay, the danger of prejudice, and the movant's good faith—usually weigh in favor of the party seeking the extension." *In re Enron Corp.*, 419 F.3d at 122 (internal quotations and citation omitted). Therefore, the focus must be on the "the reason for the delay, including whether it was within the reasonable control of the movant." *Id.*; *see also In re Lyondell Chem. Co.*, 543 B.R. at 409. The Second Circuit's hard line application of the *Pioneer* test is informed by the fact that bar dates are strictly observed in the Second Circuit. *See In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006) (noting the critical role a bar date serves in administration of a Chapter 11 case). Indeed, "[a] bar date order is 'an integral step in the reorganization process.'" *In re AMR Corp.*, 492 B.R. at 663 (quoting *In re Best Prods. Co.*, 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992)).

Under the *Pioneer* analysis, the Court must consider JMI's reason for delay in filing its proof of claim and whether that reason was within JMI's control. Here, JMI states that it did not receive notice of the Rejection Bar Date by mail or by Electronic Case Filing ("ECF") notification. *See* Motion ¶¶ 15, 18. But Republic's claims and noticing agent, Prime Clerk, served JMI by first class mail notice of the bar date, the Rejection Motion, and the Rejection Order to the address set forth in the Hangar Lease. [*See* ECF Nos. 707, 967, 1047]; *see also* Baer Decl. ¶¶ 3, 5, 7. Not only was JMI itself served by first class mail[4] but also JMI's counsel was e-mailed the Rejection Order. *See* Baer Decl. ¶ 9; *see also* Hr'g Tr. 49:11–20. JMI's

---

<sup>4</sup> The Court notes that notice to JMI was consistent with the instruction given by JMI in the Hangar Lease. *See* Hangar Lease § 13.2.

11

attorney concedes that he was signed up for ECF notifications, but claims that he never received any. *See* Hr'g Tr. 31:19–32:18.[5] Even assuming that JMI and JMI's counsel did not receive such notice, however, JMI's counsel had a duty to monitor the docket. *See Goris v. Goord*, 2006 WL 2850198, at *2 (S.D.N.Y. Oct. 4, 2006) ("Second Circuit case law demonstrates that [c]ounsel has a duty to monitor the docket and to stay current with court entries."). This is particularly true given that Republic had returned the keys to the leased premises to JMI at the end of August 2016, thus putting JMI on notice of the lease rejection. JMI's counsel had the ability to monitor the docket through ECF and the Prime Clerk website.[6]

The Court also considers the length of JMI's delay and its impact on the case. There is no concrete formula governing when the lateness of a claim is "substantial." *In re Enron*, 419 F.3d at 128. "Instead, courts consider the degree to which the delay might disrupt the judicial administration of that particular case." *In re AMR Corp.*, 492 B.R. at 667. JMI missed the Rejection Bar Date here by over five months, an inexcusable amount of time given these circumstances. *See id.* (noting that a motion filed "more than five months after the Court entered the [b]ar [d]ate [o]rder and more than three months after the [b]ar [d]ate had passed" was a

---

[5] In passing, JMI suggests that notice was "miscarried in this case and none of the declarations attached to [the Opposition] establish anything to the contrary." Reply ¶ 40; *see also id.* ¶¶ 39, 41. But JMI does not provide evidence sufficient to rebut the presumption of receipt of notice. *See Surabian v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 2014 WL 1302660, at *4 (S.D.N.Y. Mar. 31, 2014) ("Courts have routinely held that an affidavit of service is sufficient evidentiary material to raise the presumption [of receipt after proper mailing]. This presumption is not rebutted simply by . . . denying receipt of the notice.") (internal quotations and citations omitted); *In re AMR*, 492 B.R. at 664–65 (setting forth examples of instances where the presumption was rebutted).

[6] JMI's counsel represents that the firm ran searches on the Prime Clerk website but that these were not helpful because the results identified all pleadings rather than a smaller subset. *See* Hr'g Tr. 62:3–12. Such search results, however, only indicate the need for more due diligence in monitoring the docket because they are inconclusive at best. In fact, the Court was able to conduct a search on the Prime Clerk website by entering "Jet Midwest" as a search term and that search produced only twenty results. *See* Hr'g Tr. 35:22–25, 36:25–37:21 (JMI's counsel stating it would be okay, as an evidentiary matter, for the Court to search the Prime Clerk website); *cf. United States v. Bari*, 599 F.3d 176, 179–80 (2d Cir. 2010) (concluding it was not reversible error for District Court to conduct "an independent Internet search to confirm its intuition that there are many types of yellow rain hats for sale.").

significant delay); *cf. In re Dana Corp.,* 2007 WL 1577763, at *5–6 (Bankr. S.D.N.Y. May 30, 2007) (finding that a "six-month delay is not excusable" especially when creditor was *inter alia* well aware of its claim and was mailed notices of the bar date). The Court is also very concerned about the possibility of opening the floodgates to potential claims, particularly in a large case like this. *See In re Dana Corp.,* 2007 WL 1577763, at *6; *see also In re Enron,* 419 F.3d at 132 n.2 ("[C]ourts in this and other Circuits regularly cite the potential 'flood' of similar claims as a basis for rejecting late-filed claims."). The concern is especially high here because the case has already been confirmed. *See In re AMR Corp.*, 2016 WL 1068955, at *5 (Bankr. S.D.N.Y. Mar. 17, 2016) ("[C]oncern is heightened where . . . the request for relief from a bar date is made when a case is well advanced.").

## CONCLUSION

Based on the foregoing, the Court denies the Motion. The Debtors shall submit a proposed order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the docket, with a copy of the proposed order attached as an exhibit to the notice.

Dated: New York, New York
       August 28, 2017

                                          */s/ Sean H. Lane*
                                          UNITED STATES BANKRUPTCY JUDGE